IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Toby Scott Nave, ) | |
| ) | Civil Action No. 8:06-1065-MBS-BHH |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| John Doe, Aiken County ) | |
| Detention Center Administrator, ) | |
| ) | |
| Defendant. ) | |
| ) | |

The plaintiff, a prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court on the defendant's motion for summary judgment. (Docket Entry # 31.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff brought this action on April 5, 2006, seeking damages for alleged civil rights violations. On November 5, 2007, the defendant filed a motion for summary judgment. On November 7, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motions. The plaintiff filed

a response opposing the defendant's summary judgment motion on January 7, 2008.

## FACTS PRESENTED

The plaintiff was a pretrial detainee at the Aiken County Detention Center ("ACDC") from January 4, 2004, until February 11, 1004, when he was released into the custody of the South Carolina Department of Corrections ("SCDC").[1] The plaintiff originally filed this action in the United States District Court for the Southern District of Georgia on December 23, 2005, naming Trans-Cor of America, Corporal Young, and a John Doe as defendants. The plaintiff alleged that while he was being transported from Florida to the ACDC by Trans-Cor of America, the bus he was riding on was involved in an accident. He alleged that the accident was caused by Cpl. Young's careless driving and he was injured in the accident.

On May 22, 2006, the plaintiff filed an amended complaint adding "John Doe, Aiken County Detention Center Administrator (John Riley)" as a defendant. Additionally, the plaintiff added a medical indifference claim regarding his medical care during his incarceration at the ACDC from January 4 - February 6, 2005. The defendants Trans-Cor of America and Cpl. Young have been dismissed by stipulation. (Docket Entry # 28.) The sole remaining defendant, John Doe, has filed this motion for summary judgment.

---

[1]At the time he brought this action, the plaintiff was in the custody of the SCDC. Apparently the plaintiff was released from prison in November 2006 and currently resides in Orlando, Florida. (Docket Entries # 16 and 17.)

2

**APPLICABLE LAW**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of it existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific,

3

material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

The defendant contends that the plaintiff has failed to exhaust his administrative remedies. The undersigned agrees.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust administrative remedies before filing a §1983 action concerning his confinement. 42 U.S.C.A. §1997(e) states:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In *Porter v. Nussle*, 534 U.S. 516 (2002), the United States Supreme Court held that the exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes. Recently in *Woodford v. Ngo*, ___ U.S. ___, 126 S. Ct. 2378, 2386, 165 L.Ed.2d 268 (2006), the United States Supreme Court held that the PLRA exhaustion requirement requires proper exhaustion. The Court stated that "[a]dministrative law requires proper exhaustion of administrative remedies which means

4

using all steps that the agency holds out, and doing so properly." *Id*. (Internal quotations and citations omitted).  Failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including §1983.  *Id*.

The purpose of the exhaustion requirement is twofold.  First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is hauled into federal court." *Woodford*, 126 S.Ct. at 2385 (*quoting McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)).  Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id*.  Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement.

The ACDC has a grievance procedure where inmates can grieve issue relating to their confinement. (Def's Mem. Supp. Summ. J. Mot. Ex. - Nicholas Gillam's Aff. ¶13.)  However, there is no evidence in the record that the plaintiff filed a grievance regarding his medical care at the ACDC.  The only evidence on this issue is the affidavit of the Assistant Jail Administrator, Nicholas Gillam, who states that the plaintiff never filed any grievances while at ACDC.  (*Id*. ¶ 14.)

Notwithstanding that the plaintiff has not exhausted his administrative remedies, this claim also fails on the merits.  To establish a claim for deliberate indifference to medical

5

needs, a plaintiff must present facts that establish the defendants had actual knowledge of and disregard for an objectively serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann*, 906 F.Supp. 1025, 1037 (E.D.Va.1995) (quoting *Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987)). Further, an inmate is not entitled to unqualified access to health care; the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

In the plaintiff's claim against the remaining defendant, he alleges that the defendant "demonstrated indifference to Plaintiff's serious medical needs while in the custody of the Aiken County Detention Center by failing to provide proper care for Plaintiff's injuries." (Am. Compl. ¶ 46.) First, the undersigned notes that the defendant, the administrator of the ACDC, is not medical personnel. The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier v. Beorn*, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id.* Under

6

these principles, the plaintiff has not alleged facts stating any claim actionable under § 1983 regarding his medical treatment against the defendant who is non-medical personnel.

Furthermore, to the extent the plaintiff relies on the doctrine of supervisory liability, the plaintiff has failed to make any showing of supervisory liability. "Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of respondeat superior, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (citation omitted). The plaintiff must demonstrate that the prisoner faces a pervasive and unreasonable risk of harm from some specified source, and that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices. *Id. See also Moore v. Winebrenner,* 927 F.2d 1312 (4th Cir.1991); *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). The plaintiff's claim against the remaining defendant is that he "demonstrated indifference to Plaintiff's serious medical needs while in the custody of the Aiken County Detention Center by failing to provide proper care for Plaintiff's injuries." (Am. Compl. ¶ 46.)

In his amended complaint, the plaintiff alleges that on January 4, 2004, he was placed in the ACDC where he stayed for approximately one month until he was transferred to the custody of the South Carolina Department of Corrections on February 6, 2005. (Am. Compl. ¶ ¶ 30, 33.) The plaintiff alleges when he arrived at the ACDC he informed them of the injuries he had received as a result of the bus accident, but he did not immediately receive medical treatment despite requesting it. (*Id*. ¶ 31.) In his response opposing the

7

defendant's summary judgment motion, the plaintiff states that the ACDC personnel told him they would have to verify that he had been involved in an accident. (Pl.'s Mem. Opp. Summ. J. Mot. at 5.) After verifying the plaintiff's involvement in the accident, he states that he was seen by the ACDC's doctor and given pain medication. *(Id.)* Eventually he states that he was taken to Aiken Regional Medical Center where he was x-rayed and received pain medication. (*Id.*; Am. Compl. ¶ 32.) He alleges that no other follow-up care was given even though he was told he would be referred to a specialist. (*Id.* ¶ 33.) By the plaintiff's own admissions, during the month he was housed at the ACDC, he was given medical treatment at the SCDC and sent for additional treatment at the Aiken Regional Medical Center. Therefore, at most, there was a delay in treating the plaintiff or he disagreed with the treatment he received.

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee a prisoner receive the treatment of his choice. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir.1988). The type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F.Supp. 326 (S.D.Ga.1994). The mere fact that a prisoner may believe he had a more serious injury or that he required better treatment does not establish a constitutional violation. *See, e.g., Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir.1975). Incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. *Miltier*, 896 F.2d at 851.

Further, "an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the

detrimental effect of delay in medical treatment to succeed." *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir.1994).  As stated above, a medical need is serious if a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann*, 906 F.Supp. at 1037.  The plaintiff has failed to allege how any such delay in his treatment resulted in a detrimental effect or has caused him a life-long handicap or permanent loss.  Based on the foregoing, the plaintiff's medical indifference claim should be dismissed.[2]

## CONCLUSION

Wherefore, based on the foregoing, it is RECOMMENDED that the Defendant's Motion for Summary Judgment (# 31) be GRANTED and the Plaintiff's complaint be DISMISSED with prejudice.

IT IS SO RECOMMENDED.


                                          s/Bruce Howe Hendricks
                                          United States Magistrate Judge


March 19, 2008
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

---

[2] To the extent that the plaintiff's response to the defendant's summary judgment motion could be read to include a motion to appoint counsel (Pl.'s Mem. Opp. Summ. J. Mot.), the undersigned recommends that if this report is adopted, such motion be denied as moot.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 10768
> Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).